# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICO TORRES,<br><br>                     Plaintiff,<br>   v.<br><br>COUNTY OF SAN DIEGO, R. GIBSON, J. COPPEDGE and DOES 1-20,<br><br>                   Defendants. | CASE NO. 06cv1167 BTM(LSP)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

Defendants have filed a motion for summary judgment with respect to Plaintiff's claims of unlawful search and seizure (42 U.S.C. § 1983) and state law false arrest. For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTS

On April 19, 2005, Plaintiff Frederico Torres was driving his 12-year old son to school in his Chevy van. Deputy Robert Gibson was parked at the intersection of Olive Avenue and Bonita Drive, watching for stop sign violations. (Gibson Depo. at 44-45.) Gibson claims that he saw Plaintiff's van approach the stop sign then drive through the intersection at approximately 15 m.p.h. without stopping. (Id. at 48:9-20.) In contrast, Plaintiff claims that he made a complete stop at the stop sign. (Torres Decl. ¶ 3; Torres Depo. at 19-20.)

Plaintiff had a valid driver's license but had left it at home that morning. (Torres Decl. ¶¶ 4-5.) Plaintiff also claims that he had valid proof of insurance in the van. (Torres Decl.

¶ 5.)

Gibson claims that he had Plaintiff write down his name, date of birth, and address on a memo pad. (Gibson Depo. at 55-56.) Plaintiff claims that Deputy Gibson wrote down Plaintiff's name, after asking Plaintiff what his name was, and then handed the paper to Plaintiff to write his address. (Torres Decl. ¶ 7.) Whoever wrote Plaintiff's name down, the first name was incorrectly spelled "Fredericho." As a result, dispatch reported that there was no DMV record for Plaintiff. (Gibson Depo. at 31-32.) Plaintiff claims that Gibson repeatedly accused him of lying when he insisted that he had a valid driver's license at home. (Torres Decl. ¶ 7.)

When the DMV search failed to show a valid license for Plaintiff, Gibson escorted Plaintiff to the back of his patrol car. (Gibson Depo. at 58-59.) Gibson states that he performed a routine inventory search of the van because it had to be towed (due to the lack of a licensed driver for the vehicle). (Id. at 60.) Gibson claims that he did not find proof of insurance in the van. (Id. at 61.) Gibson did not ask Plaintiff whether he had proof of insurance with him. (Id. at 60.) Gibson claims that Plaintiff seemed upset when he learned that the vehicle had to be towed and started yelling words to the effect that he had a license and that the situation was unfair. (Id. at 62-63.)

Gibson wrote Plaintiff a ticket for (1) failure to stop at a stop sign (Vehicle Code § 22450); (2) being an unlicensed driver (Vehicle Code § 12500(a)); (3) no proof of insurance (Vehicle Code § 16028(a)); and (4) obstructing a peace officer (Penal Code § 148(a)(1)). (Ex. 2 to Marinnan Decl.)

According to Gibson, he tried several times to get Plaintiff to sign the ticket, but Plaintiff would not do so. (Gibson Depo. at 73.) Gibson claims that for a period of 5-10 minutes, he tried to explain the court process to Plaintiff and tried to make him understand that he was not necessarily admitting guilt by signing the ticket. (Id. at 73-74.) Plaintiff argued that he had stopped at the stop sign and indicated that he was not going to sign the ticket. (Id.) By this time, another deputy, J. Coppedge had arrived on the scene. Coppedge, who speaks some Spanish, talked to Plaintiff in both English and Spanish about signing the

ticket. (Id. at 75.) Gibson claims that Plaintiff still would not sign the ticket. Gibson explains that after five or ten minutes more of asking Plaintiff to sign the ticket, he and Coppedge had no choice but to arrest Plaintiff.

Plaintiff has a different version of events. Plaintiff denies ever refusing to sign the citation. (Torres Decl. ¶ 6.) He explains that due to the language barrier, he did not understand what Gibson wanted him to sign. (Id.) Torres also claims that neither deputy told him he could be arrested if he did not immediately sign the ticket. (Id.) Plaintiff states that when Coppedge asked him to sign the ticket, he simply repeated that he had a valid license. (Id.) Immediately thereafter, the deputies grabbed his arms, broke his elbow, and arrested him. (Id.) Plaintiff claims that everything happened very quickly. (Id.; Torres Depo. at 34:19.)

Plaintiff denies obstructing Deputy Gibson or any other deputy on the date of his arrest. (Torres Decl. ¶ 5.)

## II. DISCUSSION

Defendants seek summary judgment as to Plaintiff's claims for unlawful search and seizure (42 U.S.C. § 1983) and false arrest. The Court grants the motion in part and denies it in part.

## A. Unlawful Detention

Defendants argue that Plaintiff's unlawful detention claim[1] is barred by Heck v. Humphrey, 512 U.S. 477 (1994). The Court agrees.

Defendants have presented evidence that Plaintiff pled guilty to driving without his license in possession. Cal. Veh. Code § 12951(a). (Defs.' Ex. 4.) This conviction arises

---

[1] Although Defendants papers state that the "false arrest" allegations would necessarily imply the invalidity of Plaintiff's conviction, it is apparent that Defendants are discussing the illegal stop/unlawful detention aspect of Defendants' Fourth Amendment claim.

from the events that took place on April 19, 2005.²

Defendants argue that if the initial stop of Plaintiff was unlawful, then all charges stemming from the stop would be fruit of the poisonous tree. See Heck, 512 U.S. at 487. Thus, Plaintiff's claim that his detention was unlawful necessarily implies the invalidity of his conviction for driving without his license in possession.

Plaintiff counters that his unlawful detention claim does not necessarily imply the invalidity of his conviction because a person could be validly convicted of such a charge even if he was unlawfully stopped in the first place. Plaintiff reasons that there could be non-tainted evidence of the offense such as witness testimony that the accused was driving without his license in possession.

However, if the stop was unlawful, there would be no legitimate reason to determine whether Plaintiff had his license in possession in the first place. This case can be compared to Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003). In that case, Ballenger filed a § 1983 claim that he was illegally stopped for following too closely behind another automobile. However, Ballenger was convicted of cocaine trafficking based on drug evidence that was found in the car during the stop. The Fourth Circuit held that Ballenger's illegal stop claim necessarily implied the invalidity of the conviction, reasoning:

> If Ballenger succeeds in demonstrating in this § 1983 case that his traffic stop was illegal, the illegality of the search would require the suppression of the evidence seized. Ballenger has advanced no circumstances, nor conceived of any to our knowledge, to suggest how the state could convict him of cocaine trafficking if the automobile stop were to have been found illegal. In the particular circumstances of this case, there could be no independent source for the cocaine and no inevitable discovery of it.

Id. at 845. ³

---

² Plaintiff correctly points out that he was not originally charged with the no license in possession violation. However, he ultimately pled guilty to that offense, at which point the initial four charges were dismissed.

³ In Heck, the Supreme Court stated in a footnote: "[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." 512 U.S. at 487 n. 7. Some circuits have held that this footnote creates a general exception to Heck for § 1983 Fourth

As in Ballenger, the evidence underlying Plaintiff's conviction was uniquely available as a result of the stop. Absent the stop, there would be no occasion to inquire whether Plaintiff had his license in possession at that time. [4] Plaintiff has not shown that there would have been an independent source or inevitable discovery of the facts underlying Plaintiff's conviction. Therefore, Plaintiff's § 1983 claim of unlawful detention is barred by Heck.

**B. False Arrest**

In addition to claiming that he was unlawfully detained, Plaintiff claims that Gibson lacked probable cause to arrest him for (1) running the stop sign; (2) being an unlicensed driver; (3) not having proof of insurance; and (4) obstructing a peace officer. Plaintiff's false arrest claims are not barred by Heck because Plaintiff's success on these claims would not impugn the validity of his conviction for driving without his license in possession. Furthermore, the Court finds that there are triable issues of material fact with respect to the existence of probable cause as to all four charges.

Deputy Gibson claims that he saw Plaintiff run the stop sign. However, Plaintiff claims that he actually did stop. Therefore, there is a triable issue of material fact as to Plaintiff's arrest on this charge.

There is no dispute that Plaintiff was actually a validly licensed driver, even though he did not have his license in possession. The question is whether there was probable cause for Gibson to believe otherwise. According to Gibson, the way the computer systems work

---

Amendment unreasonable search and seizure claims. See Harvey v. Waldron, 210 F.3d 1008, 1015 (9th Cir. 2000). The Ninth Circuit does not construe footnote seven as creating a general exception, but, rather, examines the facts and circumstances of the particular case before it to determine whether the successful prosecution of the plaintiff's § 1983 claim necessarily implies the invalidity of the plaintiff's earlier conviction. See, e.g., Smith v. City of Hemet, 394 F.3d 689, 698-99 (9th Cir. 2005).

[4] This case can be distinguished from Smith v. City of Hemet, where the Ninth Circuit held that it could not determine the factual basis for the plaintiff's plea of guilty to resisting, delaying, or obstructing a peace officer and therefore could not hold that a successful prosecution of his excessive force claim would necessarily imply the invalidity of his conviction. 394 F.3d at 699. It was unclear whether Smith was pleading guilty to resisting the officers during the investigative stage, prior to the alleged use of excessive force, or during the course of the arrest. Here, the factual basis for Plaintiff's plea of guilty is clear – i.e., at the time he was stopped on April 19, 2005, he was driving without his license in possession.

for the DMV is that the "absolute correct spelling of the first name" is necessary to retrieve license information. (Gibson Depo. at 25.) Due to the incorrect spelling of Plaintiff's first name on the memo pad, there was no match found for Plaintiff. However, Plaintiff claims that Gibson, not he, misspelled his name on the memo pad. Further, Plaintiff alleges that Gibson never asked him how to spell his name. If this is true, Gibson lacked reliable information for purposes of conducting the DMV search and did not have probable cause for arresting Plaintiff for not having a valid license.

Gibson claims that he did an inventory search of the van and did not find proof of insurance. He admits, however, that he did not ask Plaintiff if he had proof of insurance with him. Plaintiff claims that he did have proof of insurance in the van. Thus, there is a genuine dispute of material fact with respect to whether probable cause existed for arresting Plaintiff on this ground.

Although Plaintiff was arrested for "obstructing a peace officer," it is unclear what the factual basis of this charge was. Plaintiff states that he did not, in any way, obstruct Gibson or any other deputy on the date of his arrest. (Torres Decl. ¶ 5.) Therefore, summary judgment is denied as to this charge as well.

Finally, there is a triable issue with respect to whether Plaintiff "refused" to sign the citation, resulting in Plaintiff being taken into custody so he could be presented before a magistrate pursuant to California Vehicle Code § 40302. According to Plaintiff, he did not understand what Gibson wanted him to sign. Although he did not sign the citation at this time, he did not refuse to do so. When Coppedge, who spoke some Spanish, asked him to sign the ticket, Plaintiff repeated that he had a valid license. Immediately thereafter, the deputies grabbed his arms, broke his elbow, and arrested him. Plaintiff claims that neither Coppedge nor Gibson told him he could be arrested if he did not immediately sign the citation. Plaintiff says that everything happened very quickly. Based on Plaintiff's version of events, it can be argued that Plaintiff was not given enough information or time for his actions to be construed as a "refusal to sign."

### III. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Plaintiff's § 1983 claim to the extent that it alleges unreasonable detention in violation of the Fourth Amendment. The motion is denied as to the false arrest claims under § 1983 and state law.

**IT IS SO ORDERED.**

DATED: January 2, 2008

_____
Honorable Barry Ted Moskowitz
United States District Judge